AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Central District of California

**ORIGINAL**

FILED
CLERK, U.S. DISTRICT COURT

JAN 31 2020

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| United States of America | |
|---|---|
| v. | Case No. |
| JOSHUA BETHEL, | 20 MJ 0045 4 |
| Defendant | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of June 22, 2018, in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Kyle Weeks, Postal Inspector
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  1/31/20

_____
*Judge's signature*

City and state:  Los Angeles, California

Hon. Steve Kim, U.S. Magistrate Judge
*Printed name and title*

## **AFFIDAVIT**

I, Kyle Weeks, being duly sworn, declare and state as follows:

### **I. PURPOSE OF AFFIDAVIT**

1. This affidavit is made in support of a criminal complaint and arrest warrant against Joshua Bethel ("BETHEL") for a violation of Title 18, United States Code, Section 1343 (Wire Fraud).

2. This affidavit is also made in support of an application for a anticipatory warrant to search any digital devices (the "SUBJECT DEVICES") in BETHEL's possession at the time of his arrest on the warrant, provided the arrest takes place within the Central District of California, as described more fully in Attachment A.

3. The requested anticipatory search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 371 (Conspiracy), 1028 (Fraud and Related Activity in Connection with Identification Documents, Authentication Features, and Information), 1029 (Access Device Fraud), 1343 (Wire Fraud), and 1344 (Bank Fraud) (collectively, the "Subject Offenses"), as described more fully in Attachment B.  Attachments A and B are incorporated herein by reference.

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there

is sufficient probable cause for the requested complaint, and
arrest warrant, and does not purport to set forth all of my
knowledge of or investigation into this matter.  Unless
specifically indicated otherwise, all conversations and
statements described in this affidavit are related in substance
and in part only.

## II. BACKGROUND OF AFFIANT

5.    I am a United States Postal Inspector ("Postal
Inspector") employed by the Los Angeles Division of the United
States Postal Inspection Service ("USPIS") and have been so
employed since April 2019.  I am currently assigned to the Los
Angeles Division Mail Theft Team, which investigates crimes
against the United States Postal Service ("USPS") and crimes
related to the misuse and attack of the mail system, including
theft of United States mail, possession of stolen mail, fraud,
access device fraud (including credit and debit cards), and
identity theft.  While with the USPIS, I have received both
formal and informal training.  Through my training and
experience, including my discussions with other Postal
Inspectors, I have learned about mail theft investigations and
common mail theft and identity theft practices.  Previously, I
was employed for five years with the United States Secret
Service ("USSS") and assigned to the Los Angeles Field Office.
During my time with the USSS, I investigated crimes related to
identity theft, access device fraud, wire fraud, and bank fraud.
Prior to becoming a Special Agent with the USSS, I worked as a

financial crimes investigator for Capital City bank in
Tallahassee, Florida.

### III.  SUMMARY OF PROBABLE CAUSE

6.  Beginning not later than June 18, 2018, and continuing
through at least July 2018, BETHEL and others known and unknown
used a PayPal Here mobile card processing service to execute
transactions on credit and debit cards belonging to co-
conspirators as part of a scheme to defraud PayPal.  BETHEL
would transfer funds that had been deposited into his PayPal
account to his Wells Fargo account, then withdraw the funds from
Wells Fargo.  After BETHEL transferred and withdrew the funds,
his co-conspirators would dispute the transactions with PayPal
for, but not limited to, the following reasons: "merchandise or
services not received", "incorrect amount", or "duplicate
transaction."  In furtherance of the scheme, on or about June
22, 2018, BETHEL caused a transaction for $1,999 to be processed
via the PayPal Here mobile card processing service.  That
transaction was later disputed and charged back to PayPal.  As a
result of the scheme, BETHEL caused PayPal a loss of
approximately $255,222.04.

### IV. STATEMENT OF PROBABLE CAUSE

7.  Based on my review of law enforcement reports, my
review of bank documents and transaction summaries, my
conversations with other law enforcement agents, and my own
knowledge of the investigation, I am aware of the following:

**A.  Review of BETHEL'S PayPal Here Account Documents**

8.  On April 15, 2019, a PayPal Global Investigator notified the USPIS that PayPal suspected an account belonging to BETHEL processed fraudulent credit card transactions resulting in a loss of $255,222.04 to PayPal.  The account appeared to support a business, "Team Food Prep."  PayPal provided the USPIS with subscriber information, excel spreadsheets, transaction statements, and recorded phone calls related to BETHEL's account (the "Team Food Prep account").  During a review of the PayPal documents, I learned the following:

a.  The business name on the account is "Team Food Prep."  The account is owned by BETHEL, who provided his date of birth and a photograph of his United States passport ending in 9573 to PayPal when he opened the account.

b.  The account has an associated phone number of (310) 882-1577 as well as two associated addresses 835 E Claude St, Carson, CA 90746 and 4217 W Century Blvd, Inglewood, CA 90304.

c.  The account has an associated Wells Fargo Bank account ending in 4803 and an associated Wells Fargo debit card ending 2830.  Both of the Wells Fargo accounts are held in BETHEL's name.

9.  During this investigation, I used law enforcement resources and databases to confirm the following: BETHEL's date of birth is that which he provided to PayPal, and his address of record with the California Department of Motor Vehicles ("DMV") is 835 E Claude St. Carson, CA 90746.  I also contacted

Department of Homeland Security, Homeland Security
Investigations ("HSI") Special Agent Alfredo Rossi who confirmed
the validity of BETHEL's United States passport ending in 9573.[1]

10.   As part of my investigation, I queried the telephone
number (310) 882-1577 on Google.  The Google search results
showed that the telephone number is associated with a Facebook
account for Team Food Prep, and a men's fitness apparel store in
Inglewood, California.  The website for the men's apparel store
listed an address of 4217 West Century Blvd. Inglewood, CA 90304
and noted the principal of the business as BETHEL.

**B.   Review of the Team Food Prep Account Transactions**

11.   During my review of the Team Food Prep account
documents, I learned that beginning on approximately June 18,
2018, BETHEL began processing transactions ranging from $250.00
to $10,000.00 multiple times a day.  These transactions
continued through July 5, 2018, with as many as 14 credit card
transactions a day.  Prior to June 18, 2018, the Team Food Prep
account typically averaged only two or three card transactions
every few days in amounts ranging from $62.10 to $411.60.

12.   Between June 18, 2018, and July 5, 2018, BETHEL
processed approximately 90 credit or debit card transactions
totaling approximately $360,302.06.

13.   Starting on June 18, 2018, BETHEL began transferring
money from the Team Food Prep account to his Wells Fargo

---

[1] Special Agent Rossi also told me that BETHEL reported his
passport as lost or stolen to the United States Department of
State on or about July 26, 2015.

account, including on the following dates in the following amounts:

      a.   On June 18, 2018, BETHEL transferred $15,641.69 from the Team Food Prep account to his Wells Fargo account.

      b.   On June 19, 2018, BETHEL transferred $13,622.29 from the Team Food Prep account to his Wells Fargo account.

      c.   On June 19, 2018, BETHEL transferred $4,350.28 from the Team Food Prep account to his Wells Fargo account.

      d.   On June 20, 2018, BETHEL transferred $18,421.79 from the Team Food Prep account to his Wells Fargo account.

14.   Withdraws from the Team Food Prep account to BETHELS Wells Fargo account continue almost daily through July 5, 2018.

15.   Beginning on July 17, 2018, the Team Food Prep account began to suffer chargebacks related to the aforementioned card transactions.[2]  By November 2018, PayPal was forced to charge off approximately $255,222.04 in losses as a result of chargebacks to the Team Food Prep account.

**C.   Review of BETHEL's Recorded Phone Calls to PayPal**

16.   On or about June 20, 2019, PayPal provided me with recorded phone calls associated with BETHEL's account.  I reviewed the phone calls, which are summarized, in part, below:

---

[2] Based on my, background, training, and experience, I know that chargebacks are filed by the bank that is the issuer of a credit or debit card.  Banks begin this process at the request of cardholders for reasons such as fraudulent credit card transactions, duplicate transactions, and transactions processed by the merchant in the wrong amount. The card networks (VISA, MASTERCARD, AMEX, DISCOVER, JCB) then act as an intermediary between the issuing bank and the acquirer, in this case PayPal. The issuing bank and the acquirer then use the card network as an intermediary to decide who will suffer a loss on a disputed transaction.

a.    On August 9, 2018, a PayPal representative called BETHEL and informed him that his account had a negative balance. BETHEL said that he did not approve of PayPal recording the call then hung up.

b.    On August 9, 2018, BETHEL called PayPal.  BETHEL advised the operator that he was also recording the phone call. BETHEL provided the operator with phone number "(310) 882-1577" and email address "TeamFoodPrep@icloud.com", and confirmed the name on the account was "Joshua Bethel".  After the operator informed BETHEL that his account was $188,000 overdrawn, BETHEL claimed that his company was going through a hardship and someone was sabotaging his business.  BETHEL said that his company was about to "go under."  The operator explained that there were chargebacks on the PayPal account.  BETHEL responded that he did not want the people filing the disputes to give him bad reviews.  BETHEL said he was "inches away" from having to file for bankruptcy and told the operator he did not want PayPal to call back ever again.

c.    On August 23, 2018, BETHEL called PayPal.  He again provided telephone number "(310) 882-1577" and email address "TeamFoodPrep@icloud.com", and confirmed the name on the account was "Joshua Peter Bethel".  BETHEL said he was calling because of the negative balance on the account.  BETHEL said he found a few of the people making false claims against his company.  He said that some of the people making claims had already received food and personal training sessions.  The operator then transferred BETHEL to the chargeback department.

d.    On August 23, 2018, BETHEL called PayPal and provided the name "Joshua Bethel".   BETHEL told the operator that he was calling because his account was negative and claimed he heard rumors about who sabotaged his company.   He said that anyone could log onto his computer, and that his PayPal password was automatically saved.   He said his employee had access to his PayPal account.   He also said he could provide a list of clients, invoices, and agreements to dispute the chargebacks on his PayPal account.   He said that some of the clients signed up for personal training sessions but did not show up.   BETHEL told the operator that he wanted to send PayPal a list with all the transactions and that he wanted to send terms and conditions for each person that initiated a dispute.   BETHEL said that he heard rumors that his clients had been making fraudulent disputes with their banks.

e.    On August 31, 2018, a PayPal representative called BETHEL to attempt to collect outstanding debt on the account.   The representative told BETHEL the account was overdrawn $226,599.59.   BETHEL responded that a couple of his clients had been submitting false claims and that he would send paperwork soon to prove as much.   BETHEL further stated that he heard rumors of another food prep company sabotaging him and would send paperwork to prove as much.

17.   Based on my conversations with PayPal investigators, I know that BETHEL never provided PayPal with any documentation related to the fraudulent transactions.

8

D.    **The Fraudulent Transactions Occurred at or Involved BETHEL's Residence or Associated Addresses**

18.    During my review of the Team Food Prep account documents, I noticed the following:

a.    On June 22, 2018, the Team Food Prep account processed a transaction for $1,999.00 from a Wells Fargo card ending in 2065 in the name "Julio Sosa". The transaction was later disputed though the chargeback process. As part of my investigation, I obtained a Wells Fargo consumer account application related to the card. The application listed the account holder as "Julio A Villa Sosa" with the address 835 E Claude St. Carson, CA 90746. I recognized this address to be the same as the DMV address of record for BETHEL.

b.    On July 5, 2018, the Team Food Prep account processed a transaction for $1,980.00 from a Wells Fargo card ending in 5456 in the name "Abel Pena". The transaction was later disputed though the chargeback process. As part of my investigation, I obtained a Wells Fargo consumer account application related to the card. The application listed the account holder as "Abel Pena Garcia" with the address 4217 W Century Blvd. Inglewood, CA 90304. I recognized this address to be the same as the address of BETHEL's apparel store.

c.    On July 5, 2018, the Team Food Prep account processed a transaction for $2,980.00 from a Chase card ending in 4422 in the name "Peter Eugene Bethel". The transaction was later disputed though the chargeback process. Based on my

investigation, I believe that Peter Eugene Bethel is BETHEL's
father.

19.   When card transactions are processed through the
PayPal Here mobile card reader, Global Positioning System
("GPS") data is captured.  Of the approximately 90 transactions
processed through the Team Food Prep account between June 18,
2018, and July 5, 2018, approximately 35 were processed at or
near the latitude and longitude: 33.88373, -118.25972.  This
position is roughly located at the intersection of Visalia Ave.
and E Claude St. in Carson, California.  The address at the
western corner of the intersection is 835 E Claude St. Carson,
California 90746, BETHEL's DMV address of record.

20.   Approximately 36 transactions were processed at or
near the latitude and longitude: 33.86028, -118.36737).  This
position is roughly located at the address 2403 Fisk Ln.,
Redondo Beach, California 90278.  On January 14, 2020, I drove
by the address and saw a white Honda with California license
plate number 8HZF647 parked in the drive way.  Using law
enforcement resources, I learned that the registered owner of
the Honda is BETHEL's father, Peter Eugene Bethel.

**E.    Review of BETHEL's Wells Fargo Account Ending 4803**

21.   As part of my investigation, I obtained documents from
Wells Fargo Bank related to BETHEL's Wells Fargo account ending
in 4803.  During my review of the business account application
for the 4803 account, I learned that the customer name listed
for the account was BETHEL, with "Team Food Prep" listed as a
secondary name.  The mailing address listed for the account was

4217 W Century Blvd. Inglewood, CA 90304 -- the address of
BETHEL's apparel store.  The phone number listed for the account
was (310) 882-1577 -- the phone number associated with the
PayPal account.

22.  The Wells Fargo Bank business account application also
listed a United States passport for BETHEL ending in 8277.
Special Agent Rossi confirmed that the United States passport
ending in 8277 was also valid for BETHEL.

23.  During my review of account statements, I observed the
incoming transfers from the Team Food Prep account between June
19, 2018, and July 5, 2018.  Over the same time period, I
noticed that cash withdraws ranging from $2,000.00 to $63,000.00
were made from the account.  I also noticed several large dollar
check deposits that appeared to have been returned for non-
sufficient funds.

**F.  Transactions Processed Through PayPal Here Extend
Beyond The Central District of California**

24.  On January 6, 2020, Patricia O'Connor, Global Director
of PayPal's financial crimes and investigations unit, provided
me a certification of records stating the following: between the
period of June 2018, and present any transactions originating
from a PayPal account or user in the state of California would
have at some point during the transaction cycle touched PayPal
servers located in the state of Utah.

## V. TRAINING AND EXPERIENCE REGARDING BANK FRAUD, IDENTITY THEFT, AND ACCESS DEVICE FRAUD

25. Based on my training and experience and information obtained from other law enforcement officers who investigate bank fraud and identity theft crimes, I know the following:

a. People involved in bank fraud, identity theft, and access device fraud crimes often collect checks, access devices, other personal identifying information (such as names, Social Security numbers, and dates of birth), and identification documents belonging to other people that they can use to fraudulently obtain money and items of value. It is a common practice for those involved in such crimes to use either false identification or stolen real identification to make purchases with stolen access devices at in order to avoid detection and to complete the transaction. Those who engage in such fraud keep evidence of such fraudulent transactions.

b. It is common for identity thieves, and individuals engaged in bank fraud, access device fraud, and identification document fraud to use equipment and software to print credit and identification cards, to create magnetic strips for credit cards, to use embossing machines to create credit cards, to use laser printers to create checks, and to use magnetic card readers to read and re-encode credit cards. Software relevant to such schemes can often be found on digital devices, such as computers. Such equipment and software are often found in the thieves' possession as they can be small and easily portable.

c.   It is common practice for individuals involved in identity theft, bank fraud, and access device fraud crimes to possess and use multiple digital devices at once.  Such digital devices are often used to facilitate, conduct, and track fraudulent transactions and identity theft.  Suspects often use digital devices to perpetrate their crimes due to the relative anonymity gained by conducting financial transactions electronically or over the internet.  They often employ digital devices for the purposes, among others, of: (1) applying online for fraudulent credit cards; (2) obtaining or storing personal identification information for the purpose of establishing or modifying fraudulent bank accounts and/or credit card accounts; (3) using fraudulently obtained bank accounts and/or credit card accounts to make purchases, sometimes of further personal information; (4) keeping records of their crimes; (5) researching personal information, such as social security numbers and dates of birth, for potential identity theft victims; (6) verifying the status of stolen access devices; and (7) coordinating with co-conspirators.

26.  Based on my training and experience, I know that individuals who participate in identity theft, bank fraud, and access device fraud schemes often have co-conspirators, and often maintain telephone numbers, email addresses, and other contact information and communications involving their co-conspirators in order to conduct their business.  Oftentimes, they do so on their digital devices.  Suspects often use their

digital devices to communicate with co-conspirators by phone, text, email, and social media, including sending photos.

## VI. TRAINING AND EXPERIENCE ON DIGITAL DEVICES

27. As used herein, the term "digital device" includes the SUBJECT DEVICES.

28. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a. Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are

not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.   The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.   Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

29.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

a.   Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel

may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

b.    Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

30.   The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

a.    Users may enable a biometric unlock function on some digital devices.  To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device.  To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second.  To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

b.    In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked

for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts.  Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time.  I do not know the passcodes of the devices likely to be found in the search.

        c.   The person who was in possession of a device or had the device among his or her belongings is likely a user of the device.  Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress BETHEL's thumb- and/or fingers on the device(s); and (2) hold the device(s) in front of BETHEL's face with his or her eyes open to activate the facial-, iris-, and/or retina-recognition feature.

    31.   Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

//

///

17

## VII.  <u>CONCLUSION</u>

32.  For all of the reasons described above, there is probable cause to believe that BETHEL has committed a violation of Title 18, United States Code, Section 1343 (Wire Fraud). There is also probable cause that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICES described in Attachment A

_____
Kyle Weeks, Postal Inspector
United States Postal
Inspection Service

Subscribed to and sworn before me
this __ day of JANUARY, 2020.

_____
UNITED STATES MAGISTRATE JUDGE